IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-03313

CHRISTOPHER SMITH,

    Plaintiff,

v.

ELEVATE HOLDINGS, INC., a New Hampshire Corporation,

    Defendant.

___

**COMPLAINT AND JURY DEMAND**
___

Defendant Elevate Holdings, Inc. ("Elevate") employed Plaintiff Christopher Smith as its Chief Pilot for over two years. Over that time, Mr. Smith's work performance was excellent. On July 18, 2021, Mr. Smith was in a serious accident and was hospitalized. Elevate responded by posting Mr. Smith's position within a day of learning of the accident and hospitalization, ignoring Mr. Smith's requests for a short leave of absence and temporary modification to his job duties, and terminating him less than a month after the accident.

Mr. Smith asserts claims against Elevate of discrimination and retaliation under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, *et seq*.

For Mr. Smith's Complaint, he alleges:

## PARTIES

1. Plaintiff Christopher Smith is a resident of the State of Colorado.

2. Elevate is a New Hampshire corporation.

3. Elevate's principal office is located at 5 Batchelder Road in Seabrook, New Hampshire 03874.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), in that this action arises under federal law, specifically the ADA.

5. This Court has personal jurisdiction over Elevate given that the company has at least minimum contacts with Colorado, including, but not limited to: employing two individuals located in Colorado; serving at least one customer based in Colorado; and operating flights into and out of Colorado.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices alleged herein were committed within this judicial district.

7. At all relevant times, Defendant Elevate was covered by the definition of "employer" set forth in 42 U.S.C. § 12111(5)(A).

8. The procedural prerequisites for the filing of this suit have been met. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue letter.

## SPECIFIC ALLEGATIONS

### Elevate's Business

9. Elevate provides aircraft management services, maintenance, and repair to customers who own private airplanes.

10. Elevate's services include providing pilots to the company's customers to operate the customers' private aircraft.

11. Elevate's customers live throughout the U.S. and abroad.

12. For those customers who opt to lease their aircraft, Elevate charters trips on these aircraft and provides the customers with a percentage of the revenue.

### Mr. Smith's Role at Elevate

13. Mr. Smith worked for Elevate as the Chief Pilot from Spring 2019 until he was terminated in August 2021.

14. As Elevate's Chief Pilot, Mr. Smith:

   a. Managed all of the company's pilots, including scheduling pilots to operate charter and private flights on aircraft owned by Elevate's customers;

   b. Functioned as the director of training for Elevate's pilots, including conducting oral examinations and serving as the check airman for Elevate's Federal Aviation Administration Part 135 Air Carrier and Operator Certification; and

   c. Operated private and charter flights as the pilot in command ("PIC") of the plane in Elevate's fleet to which he was assigned, the Falcon 7X.

3

15. Mr. Smith's job duties were generally divided as follows: 80% to administrative work (i.e., managing the company's pilots and training) and 20% to direct flight operations (i.e., serving as the PIC of the Falcon 7X).

16. In general, Mr. Smith was assigned flying for ten consecutive days followed by ten consecutive days off.

17. On both Mr. Smith's days assigned to flying and days off from flying, he attended to his administrative duties.

**Elevate's Ties to Colorado**

18. At the time that Elevate hired Mr. Smith, he lived in Colorado.

19. From approximately October 2019 until March 2020, Mr. Smith resided in New Hampshire and worked out of Elevate's office in Seabrook, New Hampshire.

20. Around the start of the COVID-19 pandemic in March 2020, Elevate converted the majority of its employees, including Mr. Smith, to remote or "home based"; at that point, Mr. Smith moved back to Colorado.

21. During the time that Mr. Smith resided in Colorado, Elevate withheld Colorado taxes from his paychecks.

22. After moving back to Colorado in March 2020 until his termination, Mr. Smith lived in Colorado and spent about one week each month at the company's office in Seabrook, New Hampshire.

23. For the remainder of the month when he was not working at Elevate's Seabrook office, Mr. Smith performed the administrative duties of his Chief Pilot role from his home in Colorado or while he was traveling as the PIC of the Falcon 7X.

24. This included participating in daily remote Zoom meetings with Elevate's management team Monday through Friday.

25. Elevate purchased a laptop computer for Mr. Smith to use while he was working remotely, including from his home in Colorado.

26. When Mr. Smith needed to travel to Elevate's office in Seabrook or serve as the PIC of the Falcon 7X, Elevate would purchase a ticket for him on a commercial airline from Denver International Airport to Boston, Massachusetts or wherever the Falcon 7X was located, respectively.

27. As the PIC of the Falcon 7X, Mr. Smith flew several charter flights into Colorado, including Broomfield, Centennial, and Telluride.

28. In the last year of his employment, Mr. Smith interviewed and hired a Denver-based line pilot.

29. Throughout this line pilot's employment with Elevate, he resided in Denver and operated flights for an Elevate customer whose aircraft, a Bombardier Challenger 604, was based in Centennial, Colorado.

### Mr. Smith's Accident

30. Throughout his employment, Mr. Smith's performance was satisfactory or better.

31. Throughout his employment, Mr. Smith reported to Elevate's Director of Operations, Doug Chouinard.

32. On July 18, 2021, Mr. Smith was hiking and speed flying (using a speed glider) with friends along Loveland Pass.

33. While attempting to descend a slope, Mr. Smith lost control of the speed glider and fell about 30 feet to the ground.

34. As a result of the fall, Mr. Smith fractured his spine and left leg and required subsequent surgeries, hospitalization, and rehabilitation.

35. Mr. Smith's accident caused physical impairments that substantially impacted one or more major life activities, including but not limited to: walking, standing, lifting, bending, and working.

### Elevate Posts Mr. Smith's Position

36. On July 19, 2021, Mr. Smith's then-wife called Mr. Chouinard to inform him about Mr. Smith's injury and hospitalization, and that he would be absent from work.

37. Mr. Smith underwent surgeries to his back and leg on July 19 and July 28, respectively.

38. On July 20, Mr. Smith saw that Elevate had posted his Chief Pilot position on a pilot job board and was actively recruiting applicants.

39. On July 20, Mr. Smith spoke with Mr. Chouinard to provide an update.

40. Later that day, Elevate's Director of Human Resources, Susan Flammia, sent an email to Mr. Smith to ask whether and how he would like to apply his accrued sick leave and vacation time.

41. About two hours later, Mr. Smith responded with a request that his 40 hours of sick leave be applied to cover that week.

**Elevate Ignores Mr. Smith's Accommodation Requests and Terminates Him**

42. The morning of July 23, Mr. Smith sent an email to the Chief of Staff and Director of Safety, Matt Dubois, with a description of Mr. Smith's injuries, prognosis, and an estimate that he would be ready to resume his administrative duties in the next week to ten days.

43. In Mr. Smith's email to Mr. Dubois, Mr. Smith also expressed concern that he had seen that Elevate was already advertising his job.

44. Mr. Smith carbon copied Ms. Flammia, Mr. Chouinard, and Elevate Chief Executive officer Greg Raiff on the July 23 email.

45. Despite the fact that Ms. Flammia had been included on the email to Mr. Dubois, later in the afternoon on July 23, Ms. Flammia informed Mr. Smith that he was being placed on unpaid leave effective immediately due in part to his alleged "non-responsiveness to communications regarding [his] health/wellness status."

46. In the following weeks, Mr. Smith continued to keep Elevate updated on his status.

47. This included an email on August 2 to Mr. Chouinard, Mr. Dubois, Ms. Flammia, and Mr. Raiff in which Mr. Smith reported that: his mobility was improving, he would be discharged from the hospital in two weeks, he would likely be able to resume flying in mid-to-late September 2021, and he was ready to resume his administrative duties immediately.

48. In that same August 2nd email, Mr. Smith reiterated his concern at seeing the job posting and observed that there seemed to be no expectation that he would be returning to work given that the company had cut off his access to his work email and meetings and was not communicating with him; not a single recipient of the email responded.

7

49. On August 9, 2023, Mr. Smith sent another email to Ms. Flammia, Mr. Chouinard, and Mr. Dubois in which he stated that he was scheduled to be discharged from the hospital on August 11.

50. Mr. Smith attached a note from his medical provider stating that he would be fully recovered and able to return to work by October 10, 2021, subject to clearance by his surgeons.

51. The next contact that Mr. Smith received from Elevate was on August 15 when Ms. Flammia asked to schedule a time to speak with Mr. Smith.

52. Mr. Smith and Ms. Flammia spoke by phone on August 17 at which time Ms. Flammia told Mr. Smith that he was terminated.

53. On October 6, 2021, Mr. Smith, through counsel, sent a letter to the company in which he expressed concern that he had been discriminated and retaliated against on the basis of his disability in violation of the ADA.

54. In the October 6 letter, Mr. Smith, through counsel, also requested a copy of his personnel file pursuant to section 8-2-129(1) of the Colorado Revised Statutes; the company has refused to produce the personnel file to date.

55. On October 15, 2021, Elevate made a direct deposit into Mr. Smith's bank account without providing an accounting of the amount that was deposited.

56. On October 29, 2021, Mr. Smith's counsel requested that Elevate provide an earnings statement for the October 15 deposit and clarification on whether the deposit included Mr. Smith's accrued paid time off, as Mr. Smith no longer had access to his payroll records.

57. The company ignored this request.

58. Mr. Smith filed charges of discrimination 541-2022-01025 and 541-2022-01029 against Elevate Holdings, Inc. and Elevate Jet LLC, respectively, on December 28, 2021.

59. The EEOC issued a Notice of Right to Sue for charge 541-2022-01025 on September 19, 2023.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
(Disability Discrimination in violation of the Americans with Disabilities Act, as amended)

60. The foregoing allegations are realleged and incorporated herein by reference.

61. Mr. Smith's back and leg injuries were physical impairments that substantially limited one or more major life activities.

62. Mr. Smith was able and qualified to perform his essential job functions with or without a reasonable accommodation.

63. It follows that, during his employment with Elevate, Mr. Smith was a qualified individual with a disability under the ADA.

64. Elevate discriminated against Plaintiff because of his disability by, among other things: seeking to replace him just one day after learning about his accident; placing him on unpaid leave; failing to engage in the interactive process in good faith; failing to provide him with reasonable accommodations; and terminating him.

65. Elevate's actions toward Mr. Smith were done knowingly and intentionally or with reckless disregard of his federally protected rights.

66. As a direct and proximate result of Elevate's actions, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, diminished reputation and other pecuniary

losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**SECOND CLAIM FOR RELIEF**
(Retaliation in violation of the ADA, as amended)

67. The foregoing allegations are realleged and incorporated herein by reference.

68. Mr. Smith participated in statutorily protected activity by:

    a. requesting a reasonable accommodation of his disability, i.e., time off to recover and temporary modification to his job duties;

    b. expressing concern that the company was seeking to replace him because he had been injured; and

    c. communicating, through counsel, that he believed that he had been discriminated and retaliated against in violation of the ADA.

69. Following Mr. Smith's protected activity, Elevate retaliated against him by, among other things: seeking to replace him just one day after learning about his accident; placing him on unpaid leave; failing to engage in the interactive process in good faith; failing to provide him with reasonable accommodations; terminating Mr. Smith; failing to provide him with a copy of his personnel file pursuant to Colorado law; and failing to provide an earnings statement for his last paycheck.

70. Elevate's actions toward Mr. Smith were done knowingly and intentionally or with reckless disregard of his federally protected rights.

71. As a direct and proximate result of Elevate's conduct, Mr. Smith has suffered and continues to suffer damages, including lost wages and benefits, diminished reputation and other

pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Smith respectfully requests that this Court enter judgment in his favor and against Defendant Elevate and order the following relief as allowed by law:

A. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B. Back pay and benefits;

C. Reinstatement or front pay and benefits;

D. Injunctive relief;

E. Punitive damages;

F. Attorney fees and costs of the action, including expert witness fees, as appropriate;

G. Pre-judgment and post-judgment interest at the highest lawful rate; and

H. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted December 18, 2023.

                    By:    LOWREY PARADY LEBSACK, LLC

                    s/Ariel DeFazio
                    1490 Lafayette Street, Suite 304
                    Denver, CO 80218
                    Telephone: (303) 593-2595
                    FAX: (303) 502-9119
                    E-mail: ariel@lowrey-parady.com
                    Attorney for Plaintiff Christopher Smith

Plaintiff's Address:
P.O. Box 3677
Parker, CO 80134

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

                    By:    LOWREY PARADY LEBSACK, LLC

                    s/Ariel B. DeFazio
                    1490 Lafayette Street, Suite 304
                    Denver, CO 80218
                    Telephone: (303) 593-2595
                    FAX: (303) 502-9119
                    E-mail: ariel@lowrey-parady.com
                    Attorney for Plaintiff Christopher Smith